Edwin Kassoff, J.
Plaintiff seeks to recover $250,000 under a policy of insurance on the life of her late husband, Rosendo Fernandez. Defendant has declined to pay the proceeds of the policy to the plaintiff and has tendered to plaintiff all of the premiums paid for the policy because, in applying for the policy, defendant alleges that Rosendo Fernandez made material misrepresentations as to his health and medical history and, if said misrepresentations were known to defendant, it would not have issued the policy.
On October 16, 1973 the deceased filled out and signed an application for life insurance with defendant. In this application Rosendo Fernandez was asked to identify the name and address of any medical doctor whom he had consulted with or been treated by in the preceding five years. The deceased identified one doctor, a Dr. Klima. Following the submission of the application, the deceased was examined by a doctor on behalf of the defendant. The examining doctor asked the deceased a series of questions from a medical form and indicated the answers of the deceased by checking either the box marked "yes” or the box marked "no”. The examining doctor testified that he indicated on the form any medical condition or treatment about which the applicant affirmatively re *303 sponded when an affirmative response referred to more than one item in any question. Question "2(b)” read as follows: "2. Have you ever consulted a physician or practitioner for or, so far as you know, ever had or been treated for * * * (b) rheumatic fever, heart murmur, heart attack, angina pectoris, stroke, chest pain, shortness of breath, palpitation, irregular pulse, elevated blood pressure, varicose veins or any other disorder of the heart or blood vessels?”
The applicant responded that he had consulted one particular physician and had been treated for two conditions listed in the question. The examining doctor underlined "elevated blood pressure” and "any other disorder of the heart”. The examining doctor testified that the applicant made no mention of either "angina pectoris” or "chest pain” or of any of the other conditions listed in the question. The doctor stated that Rosendo Fernandez, in responding to question No. 2, stated that he had a past condition of viral pericarditis for which he was admitted to St. John’s Hospital in 1971 and that his blood pressure may have been elevated in the past at times of physicals due to nervousness. The applicant also stated that he had not received any treatment for blood pressure.
Question "3(c)” of the application read as follows: "3. Have you * * * (c) within the last 5 years, had any x-ray, electrocardiogram or other diagnostic procedure ordered by a physician or practitioner?” The applicant responded "yes”, but only referred to an electrocardiogram or other diagnostic procedure conducted during his period of hospitalization at St. John’s Queens Hospital for viral pericarditis in 1971.
Question "4” on the application read as follows: "4. Other than as stated in your answers to the preceding questions, have you, within the last 5 years, so far as you know, (a) had any sickness, disease or injury? (b) been admitted to, or advised to be admitted to, a hospital or sanitarium or other similar institution? (c) consulted any physician or practitioner for any reason, including routine or checkup examination?” To each of these questions the applicant responded "no”.
The examining doctor conducted a physical examination of the applicant and took three blood pressure readings, all of which were within normal limits. He also took an electrocardiogram and chest X ray, both of which were also within normal limits.
Defendant’s underwriter obtained an attending physician’s statement from Dr. Klima. In the statement Dr. Klima stated *304 that between the period of May 29, 1971 and June 8, 1971 he treated Mr. Fernandez symptomatically for complaints of "atypical chest pain”. The diagnosis of the doctor for this condition was viral pericarditis. Thereafter, during 1971, in January, 1972 and October, 1973, he saw Rosendo Fernandez for routine examinations. He also reported that the applicant was not on any medication.
The defendant’s underwriter obtained the hospital record from St. John’s Hospital which showed a discharge diagnosis of "arteriosclerotic heart disease; acute anterior wall infarct.” The underwriter contacted Dr. Klima about the discrepancy and was advised that because there were no signs of complications and because the EKGs, X-ray and laboratory tests were normal, he determined that it was viral pericarditis instead of an anterior wall infarction. After consultation with defendant’s medical personnel, the underwriter decided that the St. John’s hospitalization in 1971 was for a myocardial infarction, but concluded that the applicant had recovered from the coronary and was thus insurable as a person with a "Type A coronary”. The underwriter testified that a "Type A coronary” is one with no recurrence or signs of symptoms (chest pains) suggestive of recurrence.
Rosendo Fernandez died on March 31, 1974 from a second myocardial infarction. The admitting physician was Dr. PerezSanz, a cardiologist whom the defendant subsequently contacted. Dr. Perez-Sanz testified that he first examined Rosendo Fernandez on February 1, 1972 and then examined and treated him on March 1, March 13, June 21 and October 17 in 1972, and on January 25, May 9 and July 24 in 1973. He testified that the applicant first came to him complaining of chest pains not necessarily produced by effort. On the occasion of the first visit, the doctor prescribed medication for the chest pains, as well as tranquilizers. Over the period of the visits the doctor testified that he diagnosed Rosendo Fernandez’ condition as coronary heart disease with angina. Over the period of treatment he prescribed nitroglycerin, hygroton (blood pressure), inderal and isordil, as well as various exercises. The doctor testified that Rosendo Fernandez was told that he was suffering from coronary heart disease and angina pectoris and knew about this condition as early as June 21, 1972.
Defendant alleges that the policy in question was issued on the basis of the statements made by the applicant in the *305 application and on the basis of the information obtained from Dr. Klima.
Defendant’s underwriter testified that if the history of chest pains following the myocardial infarction, the diagnosis of angina pectoris and the treatment by Dr. Perez-Sanz had been disclosed to defendant, the policy in question would not have been issued.
Plaintiff alleges that Rosendo Fernandez furnished only the information that was requested by defendant.
Defendant’s affirmative defenses allege that the applicant made material misrepresentations in the application for the policy in question and therefore defendant is entitled to rescission of the contract. To succeed on this defense, the defendant has the burden of proving that the application contains misrepresentations of fact, that these misrepresentations were material, and that the defense is not barred by the incontestable clause. I need not dwell on the latter point since the insured’s death was well within the two-year period of contest permitted by the insurance contract. (See Eastern Dist. Piece Dye Works v Travelers Ins. Co., 234 NY 441.)
The issue of scienter, or whether the insured knowingly made false representations to obtain the policy, is not a necessary element in establishing defendant’s right to rescind the policy. If it were, the defendant would have the burden of proving that the insured had intentionally made a material false representation of fact, which was made with knowledge of its falsehood, or recklessly, without belief in its truth, with the intention that it should be acted upon by the complaining party, and actually induces him to act upon it, to his injury. (See Arthur v Griswold, 55 NY 400; Brackett v Griswold, 112 NY 454.) It is well settled that the fact that the misrepresentation was made in good faith or as a result of inadvertence, mistake, negligence or ignorance, will not preclude it from being deemed material and a cause for the avoidance of the policy obtained in reliance upon it, and if such misrepresentation induces the insurer to assume the risk which otherwise it would not have taken, there is a legal ground of avoidance and actual fraud need not be established since it is not a material factor in avoidance of the contract under such circumstances. (See Sommer v Guardian Life Ins. Co. of Amer., 281 NY 508; Piccininni v Aetna Life Ins. Co., 250 App Div 498; Kuritzky v National Cas. Co., 23 NYS2d 776, revd on other grounds 261 App Div 1083; Equitable Life Assur. Soc. of U. S. *306 v Kaplan, 168 Misc 24, affd 258 App Div 1038; Kirschner v Equitable Life Assur. Soc. of U S., 157 Misc 635.) Thus, the courts have held that false representations, if material to the risk, void the policy even though made in good faith. (See Anderson v Aetna Life Ins. Co., 265 NY 376.)
I find, based on the credible evidence presented at trial, that the insured applied for the policy in issue on October 16, 1973 and in that application failed to state that he was being treated by Dr. Perez-Sanz for coronary heart disease and angina pectoris and that this constituted a misrepresentation of fact.
Having decided that Mr. Fernandez’ application to Windsor Life Insurance Company contained misrepresentations of fact, only the materiality of these misrepresentations remains open for consideration. The test of materiality, as set forth in subdivision 2 of section 149 of the Insurance Law, is whether "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.”
In order to inform itself about the risk it was being asked to underwrite on Mr. Fernandez’ life, defendant asked specific questions in the application about his physical condition and medical history. The prima facie importance of questions in an insurance application was recognized in New York Life Ins. Co. v Miller (17 Misc 2d 532, 533-534) as follows: "The questionnaire in the application is for the purpose of informing the insurance company on matters which it regards as material in passing upon the risk. The insurance company is entitled to form and follow its own judgment as to risks and to know all the facts which may reasonably affect its judgment. Where, therefore, the applicant fails to give truthful answers to the questionnaire, the court may not, upon a subsequent disclosure, substitute its judgment of the risk for the judgment of the insurance company, or indulge its opinion of what the insurance company would have done had the disclosure been complete in the first place. The court should protect the insured against an arbitrary cancellation of the policy, but it must also protect the insurance company against a deprivation of the right to exercise its own judgment. The rights of the parties are reconciled by the court considering and determining whether the facts not disclosed might reasonably affect the insurance company’s judgment. If not, the nondisclosure is not a false representation and the insurance company will not be permitted to take what would be an unconscionable advan *307 tage of an innocuous misstatement. If the facts not disclosed are such as might reasonably affect the insurance company’s judgment, it is again entitled to a free choice as to whether to accept or reject the risk.”
An insurer’s only burden is to establish that had it known the medical findings made by the insured’s physician, it would have rejected the application for insurance. While it must establish that it would, in fact, have rejected the application, the reasonableness of that rejection cannot be questioned. (See New York Life Ins. Co. v Miller, supra; Sachs v Penn Mut. Life Ins. Co. of Philadelphia, 28 NYS2d 1016; Greene v United Mut. Life Ins. Co., 38 Misc 2d 728, app den 16 NY2d 482.) A misrepresentation which would or could influence the insurer to refuse to accept this risk is material and a failure to disclose in response to a particular question is as much a misrepresentation as a disclosure that is a mistruth or a half truth. (See Geer v Union Mut. Life Ins. Co., 273 NY 261; Vander Veer v Continental Cas. Co., 34 NY2d 50.)
In the Vander Veer v Continental Cas. Co. case (supra, pp 52-53), the Court of Appeals discussed the issue of the materiality of a misrepresentation in an application for insurance and stated: "Two questions are presented: Whether plaintiff misrepresented his health as a matter of law and whether the misrepresentation was material as a matter of law. The answer to both must be in the affirmative. The record reveals and it is not open to dispute, that the plaintiff did misrepresent the condition of his health by failing to disclose his heart condition and the medical treatment he received. At trial, plaintiff admitted that the diagnosis and the treatment were not included in the application. The condition was a cardiac abnormality and, as a physician, plaintiff must have been aware of its significance. As an insurer, the defendant is free to select its risks and it makes inquiry of matters which it deems material to the risk. Failure to disclose is as much a misrepresentation as a false affirmative statement. (Geer v Union Mut. Life Ins. Co., 273 NY 261.) Plaintiff failed to disclose, as the statement of his physician indicated, that he had a history of having had episodes of paroxysmal atrial fibrillation since adolescence. Obviously, this was not a temporary condition or a matter so trivial that it might not have affected the disposition of the application. We hold, as a matter of law, that at the time of making application, plaintiff did misrepresent his health and we hold further, as a matter *308 of law, that such a misrepresentation was material (Insurance Law, § 149; Wageman v Metropolitan Life Ins. Co., 24 AD2d 67, affd 18 NY2d 777). By his failure to disclose his heart condition, plaintiff deprived the defendant of freedom of choice in determining whether to accept or reject the risk. On the record, there is little doubt that the defendant would have rejected the risk or certainly would have rejected it under Plan A.”
In the Vander Veer case (supra), the applicant listed on the application in response to specified medical questions, including any disorder of the cardiovascular system, five separate occasions on which he had received treatment for various disorders referred to in the question. But he neglected to set forth that approximately one year prior to the application he had visited his personal physician, at which time there was a diagnosis of paroxysmal atrial fibrillation for which he was directed to take quinidine, a medication which corrects and controls the condition, and which he had been taking for approximately 21 months. In the instant action the applicant listed Dr. Klima, the 1971 hospitalization, and indicated some previous history of blood pressure, but made no mention of Dr. Perez-Sanz, his condition and the course of his treatment for his condition, which Dr. Perez-Sanz diagnosed as angina pectoris, including the fact that he was receiving medication to control this condition.
I find, based on the credible evidence presented at trial, that defendant issued the policy on the basis of the statements made by the insured in his application and on the basis of the information obtained from Dr. Klima. I find, as a matter of fact and law, that at the time of making the application the insured did misrepresent his health and I find, as a matter of law, that this misrepresentation was material. The record is quite clear that had defendant known of the insured’s condition and continued treatment, it would not have issued the policy. Plaintiff is bound by the representations contained in the application whether these statements were deliberately or innocently made.
Plaintiff also alleged that the insured had difficulty with the English language; that this was evidenced by the fact that his application for insurance was in Spanish and that he had difficulty in understanding the questions presented to him by defendant’s examining physician. Based upon the credible *309 evidence presented at trial, I find this argument to be without merit.
Plaintiff, during the trial, suggested that knowledge by the defendant that the insured had some sort of prior heart condition was the equivalent of knowledge of the actual state of his health. I find this argument to be without merit since it is clear that defendant did not have knowledge of all the material facts at the time it issued the policy. One of the major elements of waiver or estoppel by or against an insurance company is its knowledge of the pertinent facts since no one can be presumed to have waived what was not known to him at the time of such alleged failure. Consequently, an insurance company alleged to have waived the legal effect of certain acts must be shown to have had, at the time of the alleged waiver, knowledge of all the material facts that would probably have influenced its conduct in respect to the matter to which the alleged waiver refers. (See Zeldman v Mutual Life Ins. Co. of N. Y., 269 App Div 53; Gutman v United States Cas. Co., 241 App Div 752.) It is clear from the evidence presented at trial that defendant did not have knowledge of the material facts when it issued the policy and would not have issued the policy if it had possessed such knowledge.
Accordingly, plaintiff’s action is dismissed, with costs and disbursements awarded to the defendant.