Kelly, J.
(concurring in part and dissenting in part). I concur in part iv(a) of the majority’s opinion. Because the decedent violated his contractual duty by failing to update his medical history, true statements in his insurance application became false at the time the contract was made. The false statements were “misrepresentations” within the meaning of MCL 500.2218(2).
However, I dissent from the majority’s conclusion in its part iv(b) that there was no genuine issue of material fact concerning the materiality of the misrepresentations. Plaintiff introduced sufficient evidence to raise a fact question whether defendant would have issued the same policy at the same premium if timely notified of decedent’s 1993 episode and hospitalization. Because the issue should be resolved by the trier of fact, I would affirm the Court of Appeals decision that summary disposition for defendant was improper.
I. MISREPRESENTATION AND § 2218(2)
A trial court’s ruling on a motion for summary disposition under MCR 2.116(C)(10), which tests the factual support for a claim, is reviewed de novo. See Smith v Globe Life Ins Co, 460 Mich 446, 454; 597 NW2d 28 (1999). Affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, are considered in the light most favorable to the party opposing the motion. MCR 2.116(G)(5). This case involves statutory interpretation, a question of law, that is also subject to de novo review. See Oakland Co Rd Comm’rs v *257 Michigan Property & Casualty Guaranty Ass’n, 456 Mich 590, 610; 575 NW2d 751 (1998).
As the majority points out, “representation” and “misrepresentation” are defined in the act:
A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false. [MCL 500.2218(2).]
Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning. See Western Mich Univ Bd of Control v Michigan, 455 Mich 531, 539; 565 NW2d 828 (1997). Where a statute does not define a word, courts may consult dictionary definitions to ascertain the word’s plain meaning. See Popma v Auto Club Ins Ass’n, 446 Mich 460, 470; 521 NW2d 831 (1994).
Although § 2218(2) defines a misrepresentation as, in essence, a “false statement as to past or present fact ... at or before the making of the insurance contract . . . ,” it does not define “statement.” Resorting to a dictionary, one finds that “statement” is “something stated,” “a communication or declaration in speech or writing, setting forth facts, particulars, etc.,” or “a single sentence or assertion.”[1]
In the present case, it is undisputed that, at the time he completed the insurance application, decedent provided accurate answers to the questions relating to his health and medical treatments. The application required him to provide an update to defendant if any of his answers changed between the *258 time of his application and the time defendant issued the policy.
Because of decedent’s December 1993 hospitalization, his statements that he had not been hospitalized in the preceding five years and had never been treated for chest pains were rendered false. Given that he did not update the statements, decedent’s application contained false statements regarding his health at the time defendant issued the policy.[2] Because there were false statements or representations by decedent at the time the policy was delivered to him, there were misrepresentations within the meaning of § 2218(2).
The case of Guardian Life Ins Co of America v Aaron,[3] is instructive. In Aaron, the defendant answered in his application for insurance with plaintiff Guardian Life Insurance Company that he had never been refused life insurance. That answer was true at the time. However, before Guardian accepted the policy, the defendant applied for and was refused life insurance by a second insurance company. He failed to give Guardian this information before it accepted the policy.
The New York court held that the defendant’s failure to provide updated information constituted a mis *259 representation under the applicable New York statute. See id. at 395-396.[4] The court reasoned that, because the defendant had a duty to disclose new information, statements in his application constituted continuing representations. They were considered as having been made before the time of the delivery of and payment for the policy. See id. at 395. There, the defendant’s earlier statement that he had never been refused insurance was rendered false because he did not update his application. It was deemed a misrepresentation under the New York insurance statute.
Also instructive is Cosby v Transamerica Occidental Life Ins Co [5] describing an insurance applicant’s change of health as rendering untrue his responses in an insurance policy application where the application provided that “[a]ll of the statements and answers given in this application to the best of my . . . knowledge and belief continue to be true and complete as of the date of delivery of the policy.”
Finally, there is Fjeseth v New York Life Ins Co, 20 Wis 2d 295; 122 NW2d 49 (1963). In that case, the decedent asserted on an insurance application that he *260 had never had pain in his chest. He asserted that he had not consulted or been examined by a physician in the previous ten years. After he completed the application, but before the policy was delivered, the plaintiff suffered chest pains and went to a doctor. The plaintiff failed to disclose these facts to the defendant insurer. A provision in the policy conditioned it becoming effective on the continued truth of such answers up to the time that the policies went into effect. See id. at 304. The Supreme Court of Wisconsin held that the plaintiffs failure to. update constituted a material misrepresentation under Wis Stat § 209.06(1). See id. at 305. At the time, Wis Stat § 209.06(1) provided:
No oral or written statement, representation, or warranty-made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss. [Fjeseth, supra at 305, n 1; § 209.06(1) has been revised and renumbered and is now Wis Stat § 631.11.]
Following the reasoning in Aaron, Cosby, and Fjeseth, I would conclude that decedent’s December 1993 hospitalization rendered false his statements in the application regarding his hospitalization and chest pain history. As a consequence, his application contained false statements or representations at the time the policy was delivered to him. These constitute misrepresentations within the meaning of § 2218(2).
H. MATERIALITY
The next question is whether defendant may avoid the insurance policy, as a matter of law, on the basis *261 that the misrepresentations were material. Under § 2218(1), a misrepresentation is deemed “material” when knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to “make the contract.” MCL 500.2218(1).
The Court of Appeals relied on Zulcosky v Farm Bureau Life Ins,[6] for the proposition that a misrepresentation is “material” only where the insurer would have rejected the application altogether. See id. at 99, citing In re Certified Question, Wickersham v John Hancock Mut Life Ins Co, 413 Mich 57, 65; 318 NW2d 456 (1982); Clark v John Hancock Mut Life Ins Co, 180 Mich App 695, 699-700; 447 NW2d 783 (1989).[7]
As the majority observes, the Zulcosky test for materiality appears contrary to Keys v Pace, 358 Mich 74; 99 NW2d 547 (1959). In Keys, we articulated the proper test for materiality as follows:
“The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured againstt,] so as to bring about a rejection of the risk or the charging of an increased premium.” [Id. at 82, quoting 29 Am Jur, Insurance, § 525.]
However, even under the seemingly more stringent Keys test, there exists a genuine factual dispute whether decedent’s misrepresentations were “material.”
*262 Defendant submitted an affidavit from one of its underwriters in support of its claim that the misrepresentations were material to its acceptance of the risk or hazard assumed. The affiant stated that she would have provided a policy at a higher premium had she known of the 1993 hospital visit when issuing the policy, hence a different contract.
Plaintiff proffered evidence that one day after the 1993 hospital visit, medical tests ruled out a heart attack as the cause of the decedent’s chest pain. Also, about two weeks later, decedent passed a cardiovascular stress test. It showed that his level of cardiovascular fitness was above average for someone his age.
Plaintiff also introduced an affidavit from Dr. John Hall, the decedent’s personal physician. In it, Dr. Hall stated that decedent’s health “did not change in anyway [sic]” between the date he applied for the insurance policy and when it was delivered.
A jury reasonably could conclude, on the basis of the record, that a reasonable underwriter would have issued the same policy to decedent even had he given it notice of his hospitalization. It reasonably could conclude, also, that a reasonable underwriter would not have charged an increased premium.
The majority notes that the underwriter’s affidavit was “uncontradicted” in stating that defendant would have charged a higher premium had it known of decedent’s hospitalization. It asserts, also, that plaintiff’s evidence that the decedent’s health did not change is “altogether irrelevant.” Ante at 254. This evidence leads it to conclude that a reasonable jury could only find that defendant would have charged an increased premium. Id. This conclusion impermissibly invades the province of the factfinder by resolving an unsettled question of fact.
*263 I disagree that the affidavit from defendant’s underwriter precludes a finding that a genuine factual dispute exists here whether defendant would have charged an increased premium. First, as the majority observes, the Keys test for materiality is an objective inquiry. See Keys, supra at 82. Thus, the evidence from defendant’s underwriter, while relevant, is not dispositive. Instead, the question is what a reasonable underwriter would have decided had it known of the misrepresented facts when it issued the policy of insurance. Id. In this regard, I find evidence that the decedent’s health did not change during the prepolicy period very relevant. It challenges the credibility of the affiant. See generally, McDaniels v American Bankers Ins Co of Florida, 227 AD2d 951, 952; 643 NYS2d 846 (1996). The affiant did not assert that the mere fact of the hospitalization would have occasioned an automatic premium increase irrespective of whether there was a change in the applicant’s health.[8] The affiant did not indicate that she had been informed that there had been no change in decedent’s health within two months after the hospitalization.
Moreover, plaintiff introduced evidence questioning the veracity of the defendant’s underwriter’s asser *264 tions in the affidavit. Specifically, plaintiff proffered evidence that his 1993 hospitalization was not due to a heart attack and that he passed a cardiovascular stress test shortly after the hospitalization. Also, he showed that his health did not change between the date he applied for the insurance policy and the date it was delivered. Therefore, the affidavit does not stand unchallenged. See Meyer v Blue Cross & Blue Shield of Minnesota, 500 NW2d 150, 153 (Minn App, 1993).
In Meyer, the defendant’s underwriter testified that the defendant would have denied coverage had it known of the insured’s physical condition. The court found that a question of fact existed on the issue, nonetheless. It stated that “materiality is a fact question based on the objective facts of the particular case, and ‘[a] jury is not required to accept even uncontradicted testimony if improbable or if surrounding facts and circumstances afford reasonable grounds for doubting its credibility.’ ” Id. at 153, quoting Blazek v North Am Life & Casualty Co, 251 Mum 130, 137; 87 NW2d 36 (1957).
The same is true respecting defendant’s self-serving affidavit in support of the motion for summary disposition. Surely the majority would not assert that any affidavit by its underwriters, if not directly refuted, would eliminate a fact question on materiality. By way of hypothetical example, assume that questions in the insurance application asked the applicant, “Do you use tobacco in any form other than cigarettes?” “Did you ever use tobacco in any other form?” Assume that the applicant answered “No” and that, between the date he submitted the application and received the policy, he smoked a cigar in celebration of a newborn child. Assume, also, that he did not *265 inform the insurer of that fact. Assume that, in subsequent litigation, the insurer’s underwriter submitted an affidavit in support of the insurer’s motion for summary disposition. Assume he asserted that the insurer would not have issued the insurance policy to the applicant had it known about the cigar. Would that assertion, if not directly rebutted, require a finding, as a matter of law, that the failure to disclose the cigar was a material misrepresentation?
In Brown v Pointer,[9] this Court expressed its agreement with the proposition that summary disposition is inappropriate where a factual assertion in a movant’s affidavit depends on the affiant’s credibility. In particular, it stated:
[W]here the truth of a material factual assertion of a movant’s affidavit depends on the affiant’s credibility, there inheres a genuine issue to be decided at a trial by the trier of fact and a motion for summary judgment cannot be granted. Arber v Stahlin, 382 Mich 300, 309; 170 NW2d 45 (1969); Durant v Stahlin, 375 Mich 628, 647-648; 135 NW2d 392 (1965). [Id. at 354.]
In this case, plaintiff’s evidence of the state of decedent’s health after the hospitalization afforded reasonable grounds to doubt the credibility of the underwriter’s affidavit. Thus, plaintiff created a triable fact question whether defendant would have charged an increased premium had it known of the hospitalization that, decedent’s physician said, showed no change in decedent’s health. See Skinner v Square D Co, 445 Mich 153, 161; 516 NW2d 475 (1994), “[t]he court is not permitted to assess credibility, or to determine facts on a motion for summary judgment.”
*266 Moreover, the court should be cautious in concluding that no factual dispute exists solely on the basis of an “uncontradicted” affidavit from an insurance company’s underwriter. See Gibbons v John Hancock Mut Life Ins Co, 227 AD2d 963, 964; 643 NYS2d 847 (1996); Volunteer State Life Ins Co v Richardson, 146 Tenn 589; 244 SW 44 (1922); 6 Couch, Insurance, 3d, § 82:7, p 82-15.
In Volunteer State L Ins Co, the Tennessee Supreme Court articulated well the concerns associated with accepting as dispositive statements from insurance companies regarding the materiality of a misrepresentation:
It is not to be left to the insurance company to say after a death has occurred that it would or would not have issued the policy had the answer been truly given. It is true the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer, but no sound principle of law would permit a determination of this question merely upon the say so of the company after the death has occurred. [244 SW 49 (emphasis added).]
When reviewing the ruling on defendant’s motion for summary disposition, we construe the facts in the light most favorable to plaintiff. That, coupled with the reasoning already set forth, leads me to conclude that the fact issue concerning the materiality of decedent’s misrepresentations should be resolved by the trier of fact. Summary disposition in defendant’s favor, therefore, was improper.
in. CONCLUSION
I would hold that, because decedent failed to update his health information, his application con *267 tained misrepresentations on the date the insurance policy was delivered. Thus, because a genuine factual dispute exists regarding whether the misrepresentations were material, I would affirm the Court of Appeals conclusion that summary disposition for defendant was improper.
Cavanagh, J., concurred only in the result reached by Kelly, J.

 Random House Webster’s College Dictionary (1995).

 See 6 Couch, Insurance, 3d, § 82:2, pp 82-6, 82-7, ns 8-9 (1998). Statements set forth in an application for insurance are “continuing representations” until the date the contract becomes binding; see generally Stipcich v Metropolitan Life Ins Co, 277 US 311, 316; 48 S Ct 512; 72 L Ed 895 (1928), explaining the “continuing representation” concept. This Court has recognized the concept of “continuing representations,” at least where an indorser of a note gives a financial statement to a bank to secure a line of credit. See First State Savings Bank v Dake, 250 Mich 525, 528; 231 NW 135 (1930). In Dake, this Court called the financial statement a “continuing representation” of defendant’s responsibility. There, the indorser represented that the information within the financial statement was and continued to be true and correct unless notice of a change was given.

 181 Misc 393; 40 NYS2d 687 (1943).

 The New York statute provisions implicated in Aaron are remarkably similar to § 2218. In particular, § 149(1) of the New York Insurance Law defined, at that time, a representation as “a statement as to past or present fact made to the insurer ... , at or before the making of the insurance contract as an inducement to the making thereof.” A “misrepresentation” was defined as “a false representation.” Gay v NY Property Ins Underwriting Ass’n, 1985 WL 1665 (SD NY). The statute further provided:
(2) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract. [Greene v United Mut Life Ins Co, 38 Misc 2d 728, 730; 238 NYS 2d 809 (1963). NY Ins Law § 149, revised and renumbered and is now McKinney’s Insurance Law § 3105 (1985).]

 860 F Supp 830, 834 (ND Ga, 1993).

 206 Mich App 95; 520 NW2d 366 (1994).

 We denied leave to appeal in Zulcosky. 448 Mich 929 (1995).

 The majority asserts that “the undisputed evidence presented to the trial court made clear that the correct information would have led the insurer to charge an increased premium, hence a different contract.” Ante at 254. The correct information was that, at the time of and after the 1993 hospitalization, no test or medical opinion evidenced that defendant had had a heart attack. The affiant based her conclusion that the defendant would not have entered into the insurance contract on her belief, stated in the affidavit, that the decedent “had been admitted to Sparrow Hospital in December 1993 complaining of shortness of breath, chest pains and a probable heart attack . . . .”
Hence, the affiant’s reference to charging an increased premium was based on inaccurate or incomplete information. Also, it did not state that any hospitalization, regardless of the triviality of its cause, would have given rise to a different contract having been offered.

 390 Mich 346; 212 NW2d 201 (1973).