FJESETH, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

*May 2—June 4, 1963.*

296

300

301

For the appellant there were briefs by *Johns, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns.*

For the respondent there was a brief and oral argument by *N. George DeDakis* of La Crosse.

CURRIE, J.   In the opinion by this court on the former appeal, the court stated (p. 235) :

"Questions of law have been argued by both parties that can best be resolved after the facts and inferences from facts have been properly determined.  We have not passed upon them for that reason."

One of the questions of law presented on the former appeal, referred to in above-quoted paragraph, concerned the legal effect of insured's failure, during his conference with defendant's agent Ruediger on June 18, 1959, to disclose that he had consulted Dr. Pribek because of the pains in the left side of his chest, and that the doctor had told him that very day that the likely diagnosis was angina pectoris.

The generally accepted rule is that the applicant for life insurance is under a duty to disclose to the insurance company any facts which develop or are discovered by him after the making of the application, and before the policy takes effect, that materially increase the risk.  29 Am. Jur., Insurance, p. 960, sec. 697; 45 C. J. S., Insurance, p. 155, sec. 473 (3) ; 1 Appleman, Insurance, p. 227, sec. 219; 7 Couch, Insurance (2d ed.), p. 464, sec. 37 :109; and Vance, Insurance (3d ed.), pp. 379, 380, sec. 63.

One of the leading cases in which the foregoing is stated is that of *Stipcich v. Insurance Co.* (1928), 277 U. S. 311,

316, 317, 48 Sup. Ct. 512, 72 L. Ed. 895, in which Mr. Justice (later Chief Justice) STONE, speaking for the United States supreme court, declared:

"Insurance policies are traditionally contracts *uberrimae fidei* [the most abundant good faith] and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. [Citing cases.]

"Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. [Citing cases.]

"But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For, even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy [citing cases], or if a policy has been issued, it has a valid defense to a suit upon it."

Other cases which have applied the rule stated in the *Stipcich Case* are: *Cohen, Friedlander & Martin Co. v. Massachusetts Mut. Life Ins. Co.* (6th Cir. 1948), 166 Fed. (2d) 63, certiorari denied, 334 U. S. 820, 68 Sup. Ct. 1086, 92 L. Ed. 1750; *Pierre v. Metropolitan Life Ins. Co.* (1937), 22 Cal. App. (2d) 346, 70 Pac. (2d) 985; *Lennon v. John Hancock Mut. Life Ins. Co.* (1959), 339 Mass. 37, 157 N. E. (2d) 518; *Metropolitan Life Ins. Co. v. Goldsmith* (1952), 201 Misc. 569, 112 N. Y. Supp. (2d)

385; *Metropolitan Life Ins. Co. v. Somers* (1946), 137 N. J. Eq. 419, 45 Atl. (2d) 188; *Gordon v. Prudential Ins. Co.* (1911), 231 Pa. 404, 80 Atl. 882; and *Moore v. American Home Mut. Life Ins. Co.* (Tex. Civ. App. 1943), 174 S. W. (2d) 788.

In his original application for the $35,000 policy which, together with the supplemental application, also constituted the application for the $10,000 policy, insured stated in his answers to specific questions that he had never had pain in the chest and that he had not consulted, or been examined by, a physician during the past ten years. Part I of the application conditioned its becoming effective on the continued truth of such answers up to the time that both policies went into effect. Nevertheless, in between the date of such original application and insured's conference with Ruediger on June 18th, the insured did suffer chest pains severe enough to cause him to consult Dr. Pribek for an examination to ascertain their cause. Moreover, Dr. Pribek had advised the insured earlier that same day that the provisional diagnosis of his ailment was angina pectoris. Furthermore, the doctor then gave the insured an explanation of this disease and its cause and prescribed nitroglycerin pills to relieve his chest pains. Under the authorities hereinbefore cited, a duty rested upon insured to disclose to defendant or its agent these facts occurring (1) after the date of the original application for the $35,000 policy (since the supplemental application for the $10,000 policy incorporated this earlier application) and (2) before the common effective date of the two policies.

Plaintiff's counsel argues that insured had no duty to make such disclosure because he, in good faith, did not believe that any change had occurred between May 27 and June 18, 1959. On this appeal we accept the jury's finding to this effect as a verity because there is credible evidence to support it. This good-faith belief on insured's part is ma-

terial with respect to whether the representation or warranty made in the supplemental application, that to the best of his knowledge and belief no change had occurred in his health or insurability since the date of his previous application, was false within the meaning of sec. 209.06 (1), Stats.[1] Nevertheless, we do not deem such good-faith belief, that the condition of his health had not changed since May 27th, material on the issue of whether he had a duty to disclose to defendant or its agent the fact of the chest pains, the consultations with, and examination by, Dr. Pribek, and the provisional diagnosis of angina pectoris. *Cohen, Friedlander & Martin Co. v. Massachusetts Mut. Life Ins. Co., supra;* cf. *National Life & Accident Ins. Co. v. Gorey* (9th Cir. 1957), 249 Fed. (2d) 388. The insured was chargeable with knowledge that defendant would not have propounded questions in the original application about chest pains and consultations with, and examinations by, physicians if it did not consider that these questions had a material bearing on his insurability. Insured had a duty to disclose the activities and changes which had occurred in the meantime with respect to these factors because defendant's judgment as to insurability, and not insured's, controlled the question of whether a policy would be issued.

On this latter point we deem apposite the decision in *Lennon v. John Hancock Mut. Life Ins. Co., supra.* There the insured answered in his application that he had never been told that he had cancer, and that he had never been treated for cancer. He further answered that he had not been treated by a doctor or in a hospital during the previous

---

[1] Sec. 209.06 (1) provides: "No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

five years. One week after making the application, the insured submitted to an operation to remove a cancerous growth from his larynx. The policy was issued eight days later. Insured died of cancer of the pancreas less than two years later. His wife, the beneficiary, testified that insured at the time of performance of the operation did not know he had cancer, but thought he was being treated for hoarseness. Nevertheless, the Massachusetts court stated (p. 41):

"We do not think that the insured's lack of knowledge that he had cancer discharged him from the obligation to report the operation to the insurance company. We can see no basis for an assumption by the insured, in good faith, that the insurer would not deem such an operation material, whatever the disease."

This brings us to the question of whether these facts that insured failed to disclose were so material to the issue of insurability, in that they increased the risk or contributed to the loss, that defendant is now entitled to avoid the policy. We need not decide whether sec. 209.06 (1), Stats., is directly applicable.[2] Nevertheless, we deem the tests of increasing the risk or contributing to the loss, set forth therein, the proper ones to be applied. Crowell, False Statements by Applicants for Policies of Life Insurance,

---

[2] Sec. 209.06 (1), Stats., applies to statements made in applications for insurance. Strictly speaking, it does not apply to changes in the facts which occur after application is made. These are embraced by the continuing common-law duty to make disclosure. Thus it is arguable that sec. 209.06 (1) does not apply to the original application even though it does apply to the same facts which, by the time of their reiteration in the supplemental application, had become false when the supplemental application was executed on June 18th. Nevertheless, since the insured and defendant agreed that insured's answers to the original application were to be true as of the effective date of the policies as a precondition to such policies' becoming effective, it is arguable that sec. 209.06 (1) is properly applicable to the original application incorporated in both policies.

19 Marquette Law Review (1935), 228, 235. Dr. Jernigan, defendant's associate medical director, testified that had defendant received information of the provisional diagnosis of angina pectoris, it would have declined the application. No evidence was adduced that this would not be in accord with the practice generally followed by life insurance companies. Furthermore, we consider it a matter of common knowledge that persons afflicted with angina pectoris are not considered good risks by life insurance companies. Therefore, we conclude that the facts that insured failed to disclose increased the risk and contributed to the loss so as to entitle the defendant to avoid any liability on the policy.

Under the original application in the instant case, the policy applied for was not to go into effect until delivery of the policy and payment of the first premium "and then only if the answers made in the application represent, without material change, true and complete answers to the same questions if asked at the time of delivery, . . ." This provision with respect to the effective date of the policy was not altered by the supplemental application which incorporated the original application into the $10,000 policy. Nevertheless, the amendments to the application, which were executed by the insured at the same time that he signed the supplemental application, changed the effective-date provision of the original application so as to remove therefrom the above-quoted portion with regard to the truth of insured's answers. If the amendment with respect to the instant $10,000 policy is to be given the effect of removing the provision which prevented the policy's taking effect unless the answers made in the original application were true as of the date of delivery of the policy, then it is arguable that the declaration in such amendment whereby the insured declared these answers to be true as of the time of the amendment must be given effect whether the insured

read it or not.[3] This is because a party to a contract cannot ordinarily accept the advantageous portion of a contract without also being bound by the portion that is disadvantageous.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

[3] See *Emmco Ins. Co. v. Palatine Ins. Co.* (1953), 263 Wis. 558, 58 N. W. (2d) 525; and *Langlois v. Wisconsin Nat. Life Ins. Co.* (1963), 19 Wis. (2d) 151, 119 N. W. (2d) 400. These two cases hold that where an agent of an insurance company inserts false answers, not based on facts supplied by the insured, in a policy or application, the insured is not necessarily bound thereby where he fails to read and discover such false answers in such policy or application.