Edward L. TOMLINSON, Jr., and Patricia Tomlinson,
Plaintiffs-Appellants,

v.

MIDAMERICA MUTUAL LIFE INSURANCE COMPANY,
Defendant-Respondent.†

Court of Appeals

*No. 91-2161. Submitted on briefs February 17, 1992.—Decided
March 3, 1992.*

(Also reported in 483 N.W.2d 234.)

† Petition to review denied.

On behalf of plaintiff-appellants, the cause was submitted on the briefs of *James A. Johnson* of *Johnson, Weis, Paulson & Priebe, S.C.* of Rhinelander.

On behalf of defendant-respondent, the cause was submitted on the brief of *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. The plaintiffs, Edward L. Tomlinson, Jr., and his wife, Patricia Tomlinson, appeal a summary judgment in favor of MidAmerica Mutual Life Insurance Company dismissing their complaint alleging that MidAmerica breached its insurance contract by refusing to pay medical expenses Patricia incurred due to

complications in her pregnancy. *Fjeseth v. New York Life Ins. Co.*, 20 Wis. 2d 295, 122 N.W.2d 49 (1963), holds that when a person knows that his medical condition has changed after filling out an insurance application but before issuance of the policy, he has a good faith duty to convey that information to the insurance company, *if it materially increases the risk of loss.* The trial court concluded as a matter of law that the Tomlinsons' failure to disclose Patricia's pregnancy, discovered after a completed application but before the policy was issued, violated the *Fjeseth* rule. We disagree.

Because the policy excluded coverage for normal costs of pregnancy, and because the Tomlinsons claim they advised MidAmerica of their intent to conceive a child, we conclude that whether Patricia's pregnancy materially increased the risk of loss to MidAmerica is a disputed factual issue. Further, material disputed facts also prevent summary judgment on MidAmerica's allegation of misrepresentation regarding Patricia's abnormal menstrual period. We therefore reverse the summary judgment and remand for further proceedings.[1]

Our review of summary judgment is de novo. *Grosskopf Oil, Inc. v. Winter*, 156 Wis. 2d 575, 581, 457 N.W.2d 514, 517 (Ct. App. 1990). If there is a dispute as to material facts or if competing inferences might be drawn from the facts, summary judgment is unavailable. *Leverence v. USF&G*, 158 Wis. 2d 64, 74, 462 N.W.2d

---

[1]The Tomlinson's claim of bad faith was properly dismissed and need not be reviewed further. "The plaintiff cannot maintain a cause of action for the tort of bad faith if the validity of his claim under the policy was fairly debatable." *Warmka v. Hartland Cicero Mut. Ins. Co.*, 136 Wis. 2d 31, 34, 400 N.W.2d 923, 925 (1987).

218, 222 (Ct. App. 1990). We must reverse the summary judgment if we determine that the circuit court erred by deciding that no material factual dispute existed. *Kreinz v. NDII Secs. Corp.,* 138 Wis. 2d 204, 209, 406 N.W.2d 164, 166 (Ct. App. 1987).

The facts are as follows: In September 1988, Edward began seeking health insurance that would specifically cover complications of pregnancy. Patricia had had a miscarriage, and they wanted to be insured in the event future complications arose. Edward contacted Conrad Zander, an insurance agent who informed him of the MidAmerica health insurance plan.

Edward, in his deposition, stated that he informed Zander that Patricia had had a miscarriage, that they were seeking to have a child and that they wanted assurance that they were covered for pregnancy complications. Edward also said that he discussed with Zander the types of situations under the policy that would constitute pregnancy complications. Zander, however, states that he does not recall Edward telling him that they were trying to start a family, although he admits discussing whether pregnancy complications would be covered.

The Tomlinsons decided to purchase the MidAmerica policy, electing general health insurance coverage, which included coverage for pregnancy complications *but not for the costs of a normal pregnancy.* Edward filled out the application form. A question on the application asked whether any proposed insured was now pregnant, which Edward answered no.

The day after Edward completed the application, Patricia went to Zander's office to sign it. She then kept a doctor's appointment and learned that she was approximately eight to ten weeks pregnant. According to Patricia, she scheduled the doctor's appointment because she had had an abnormally light menstrual period and

96

thought it might be related to her earlier miscarriage. The Tomlinsons did not inform Zander of Patricia's pregnancy at this time. Approximately four months later, Patricia developed complications in her pregnancy. As a consequence, she had to have a cesarean section. The premature baby died the next day.

MidAmerica denied payment of Patricia's medical expenses on the grounds that she was pregnant before the policy became effective. MidAmerica's underwriter swore that MidAmerica would not have issued a policy to the Tomlinsons if it had been informed of Patricia's pregnancy, and that her pregnancy materially increased the risk of loss to MidAmerica due to the increased potential for medical complications to arise as a result of the pregnancy.

The Tomlinsons filed suit against MidAmerica alleging breach of the insurance contract and also sought tort damages for bad faith. The Tomlinsons then moved for summary judgment. The trial court denied the Tomlinsons' motion but granted summary judgment in favor of MidAmerica. It determined that under *Fjeseth,* the Tomlinsons had a duty to disclose the fact that Patricia was pregnant, and therefore MidAmerica had no obligation to pay Patricia's medical expenses. We conclude that under *Fjeseth,* the Tomlinsons had a duty to disclose only if the fact that she was pregnant materially increased the risk of loss to MidAmerica. Because this is a disputed factual issue, summary judgment was inappropriately granted.

In *Fjeseth,* the court determined that the applicant had a duty to disclose that he was provisionally diagnosed with angina pectoris[2] when he learned of this fact

[2]Angina pectoris is "a disease marked by brief paroxysmal attacks of chest pain precipitated by deficient oxygenation of the

after filling out an insurance application but before the policy became effective. The court stated that the general rule is that: "[T]he applicant for life insurance is under a duty to disclose to the insurance company any facts which develop or are discovered by him after the making of the application, and before the policy takes effect, that *materially increase the risk.*" *Id.* at 302, 122 N.W.2d at 53 (emphasis added). The court reasoned that a provisional diagnosis of angina pectoris materially increased the risk of loss because there was testimony from the insurance company that it would not have issued the policy if it had known that a provisional diagnosis of angina pectoris had been made, and there was no evidence suggesting that this would not be in accord with the general practice of life insurance companies. Significantly, the court took judicial notice that persons afflicted with angina pectoris are not considered good risks by life insurance companies. *Id.* at 307, 122 N.W.2d at 55.

Here, however, there is a factual dispute whether pregnancy materially increases the risk of loss, especially where the policy does not cover the costs of a normal pregnancy. We are not willing to take judicial notice of an increased risk. Courts may take judicial notice of facts that are "(a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Section 902.01(2), Stats. We are unwilling to take judicial notice that the mere fact of pregnancy alone influences premium rates or otherwise increases the risk under a policy

heart muscles." WEBSTER'S NEW COLLEGIATE DICTIONARY 44 (1977).

that by its terms excludes coverage for normal pregnancies.

The Tomlinsons presented evidence that they informed Zander of Patricia's previous miscarriage, that they were trying to start a family and that they discussed whether and what pregnancy complications were covered under the policy. Thus, the Tomlinsons argue that, unlike Fjeseth's heart problems, Patricia's potential pregnancy was disclosed, and whether she was pregnant at the time of application is immaterial. The underwriter's affidavit, however, appears to dispute this.[3] Although the application includes an inquiry about pregnancy, that does not prove its materiality. A reasonable inference could be drawn that the question is relevant to an application for coverage of an ordinary pregnancy. The conflict between the affidavit and the competing inference that can be drawn from the other evidence presents a disputed issue of material fact.

MidAmerica also alleges that the Tomlinsons misrepresented a material fact on their application by responding that no effects remained from Patricia's mis-

---

[3]MidAmerica also argues that the Tomlinsons' duty to disclose under *Fjeseth* is further supported by the conditional receipt they signed. The conditional receipt states that:

A. THE INSURANCE APPLIED FOR WILL BECOME EFFECTIVE PRIOR TO DELIVERY OF A POLICY ONLY IF:

. . ..

2. The Proposed Insured(s) constitute(s) a risk acceptable to the Company on the effective date under its rules, limits and standards . . ..

The conditional receipt, however, does nothing to resolve the question of increased risk under the *Fjeseth* rule.

99

carriage. There was evidence that the Tomlinsons believed that Patricia's abnormal menstrual period was a result of the miscarriage. Section 631.11(2), Stats., provides that misrepresentations may affect the insurer's obligation if certain conditions are proven. Whether a misrepresentation is material is a question of fact that should be presented to the jury. *See Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 262, 400 N.W.2d 33, 40 (Ct. App. 1986). Therefore, whether MidAmerica's coverage is void on these grounds is a factual matter that we cannot decide.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.