**Myrna Jean COSBY, as Executrix of the Estate of Charles E. Cosby, Plaintiff,**

v.

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 1:92–cv–570–RLV.

United States District Court, N.D. Georgia, Atlanta Division.

July 8, 1993.

Roy E. Barnes, Barnes Browning Tanksley & Casurella, Marietta, GA, for plaintiff.

H. Sanders Carter, Jr., Elizabeth Johnson Bondurant, Carter & Ansley, Atlanta, GA, for defendant.

### ORDER

VINING, District Judge.

This matter is before the court on the defendant's motion for summary judgment. The plaintiff brought suit to recover death benefits under an individual insurance policy issued by the defendant, Transamerica Occidental Life Insurance Company ("Transamerica"), on the life of her husband, Charles E. Cosby.[1] The life insurance policy provided coverage of $350,000 when originally issued in 1987, and was increased to $500,000 in 1989. The defendant has paid benefits in the amount of $350,000 but has refused to pay the additional $150,000. The defendant has moved for summary judgment on the ground that the additional coverage is subject to rescission under O.C.G.A. § 33–24–7 because the insured did not advise Transamerica that he had been hospitalized for a brain tumor between the time the application was submitted and the time it was approved.[2]

The following facts are undisputed. On June 24, 1987, Charles Cosby signed Part I of an application to Transamerica for life insurance coverage of $350,000, with the plaintiff designated as the beneficiary. (Plaintiff's Deposition at 10; Exhibit 1 to Plaintiff's Deposition). On June 30, 1987, Cosby signed Part II of the application, dealing with his health and medical history. (Plaintiff's Dep. at 13–14; Exhibit 2 to Plaintiff's Dep.).

Transamerica accepted the application and issued policy no. 40446806 to Cosby with an effective date of April 28, 1987. (Affidavit of Jack M. Pressley, the plaintiff's Transamerica agent; Affidavit of James R. Smith, Individual Claims Department Manager for Transamerica). The 1987 policy provided coverage in the amount of $350,000.

In late 1988, Cosby contacted Pressley about increasing his life insurance coverage. (Pressley Affidavit). On January 15, 1989, Cosby signed Part I of an application to increase his coverage to $500,000 and a nonsmoker's questionnaire. (Pressley Affidavit; Plaintiff's Dep. at 16–17; Exhibits 3, 4 to Plaintiff's Dep.). On February 28, 1989, Cosby signed Part II of his application to Transamerica, which contained his health and medical history. (Pressley Affidavit; Plaintiff's Dep. at 19; Exhibit 5 to Plaintiff's Dep.). Cosby did not tender a premium for the proposed increase in coverage at that time.

Cosby's application was accepted by Transamerica's Underwriting Department on March 29, 1989. (Affidavit of Bruce Powell, employed by Transamerica as Second Vice President and Division Manager, New Busi-

---

1. The action was removed to this court on the basis of diversity jurisdiction.

2. The defendant has conceded that a jury question remains on the issue of whether the additional coverage was rescinded by agreement of the parties.

ness Underwriting and Issue). A new policy was not prepared; rather, Transamerica issued several new pages to the existing policy. A new first page was prepared, showing the increased face amount of coverage. Transamerica also prepared new Policy Data pages and a new Endorsement page, showing that the original coverage of $350,000 was to retain its "date of issue" of April 28, 1987, for purposes of the policy's incontestable clause and the suicide clause.[3]

On March 29, 1989, Transamerica mailed the new policy pages to Pressley, the Cosbys' agent, to be delivered to Cosby. (Powell Affidavit). Pressley recalls having received the new pages around April 1, 1989. (Pressley Affidavit). Pressley also received an internal document entitled Statement of Change that showed that Cosby's coverage was being increased from $350,000 to $500,000. The statement showed that a premium balance of $45.66 was due for the period of February 28, 1989, through April 28, 1989. Pressley then called Cosby and told him that the documents were there and that the premium must be paid before the new pages could be delivered. (*Id.*). Pressley agreed to mail the pages to Cosby upon receipt of a check for the premium. (*Id.*). The Cosbys sent a check to Pressley and the policy pages were delivered to the Cosbys.

As amended, the policy had a "Policy Date" of April 28, 1987, the effective date of Cosby's original coverage, and a "Date of Issue" of February 28, 1989, for the increased coverage. It is unclear whether the amended policy included both the original Part I and the 1989 Part I of the application. Transamerica has assumed for the purposes of the summary judgment motion that the policy included Parts I and II of the 1987 application and Part II of the 1989 application.

Part I provides:

It is agreed that: (1) This application shall consist of Part I and Part II and shall be the basis for any policy issued on this application; (2) Except as otherwise provided in the conditional receipt, if issued, with the same number as Part I of this application, any policy issued on this application shall not take effect unless all of the following conditions are met: (a) The first full premium is paid, (b) The policy is delivered to the owner during the lifetime of the person(s) to be covered by such policy, and (c) All of the statements and answers given in this application to the best of my (our) knowledge and belief continue to be true and complete as of the date of delivery of the policy.

In Part II of the 1989 application, the following questions were asked about Cosby's health and medical history, and the following answers were given by him on February 28, 1989:

6. WITHIN THE PAST FIVE YEARS HAVE YOU:

a. Consulted, been examined or treated by any physician or practitioner?

Answer: No

b. Had an X-ray, electrocardiogram or any laboratory tests or study?

Answer: Yes. 1987—EKG—Blood Studies for Ins.—Transamerica. Test results normal.

c. Had observation or treatment at a clinic, hospital, or sanitarium?

Answer: No.

d. Had or been advised to have a surgical operation?

Answer: No.

e. Had dizziness, shortness of breath, pain or pressure in the chest?

Answer: No.

7. TO THE BEST OF YOUR KNOWLEDGE, HAVE YOU EVER BEEN TOLD YOU HAD:

a. Epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system?

Answer: No.

Above Cosby's signature, Part II of the application stated: "The statements and answers given above are true, complete and

3. The original copy of Cosby's amended policy cannot be located. Transamerica has submitted a specimen copy of the policy as it existed after the insertion of the new pages.

correctly recorded, to the best of my knowledge and belief."

On December 19, 1989, Cosby changed beneficiary of his policy to "The Estate of the Insured, Charles E. Cosby." Cosby died on August 31, 1990, from general ill health and malnutrition due to or as a consequence of a malignant brain tumor.

On October 22, 1990, Transamerica received a claim form in which the plaintiff, as administratrix of Cosby's estate, sought payment of death benefits in the amount of $500,000. Because the additional coverage of $150,000 was within the two-year contestable period when Cosby died, Transamerica performed a routine investigation of his health and medical history. Transamerica learned that Cosby had had a period of confusion and had been hospitalized at Kennestone Hospital in Cobb County, Georgia, on March 28, 1989. On April 1, 1989, Cosby was diagnosed as having a brain tumor. Transamerica had not been informed of that hospitalization.

On October 26, 1990, Transamerica issued payment of death benefits and interest in the amount of $353,452.05 to the plaintiff. Transamerica denied the claim for the additional coverage of $150,000 based on the discovery that Cosby had been hospitalized for a serious and life-threatening illness, but had not reported that hospitalization, between the time he applied for the additional coverage and the time his application was approved.

The general rule is that an applicant for insurance has no duty to disclose information about which the insurer has not inquired. *Georgia Farm Bureau Mutual Insurance Co. v. First Federal Savings & Loan Association of Statesboro,* 152 Ga.App. 16, 262 S.E.2d 147 (1979). In this case Transamerica did inquire as to whether Cosby had consulted a doctor, been observed or treated in a hospital, or ever had any disease or abnormality of the brain. The defendant does not dispute that Cosby's answers to

those questions were truthful when given on February 28, 1989, or that the increased insurance coverage had an effective date of February 28, 1989.[4] Transamerica contends that Cosby had a common law duty to inform the defendant of the change in his health that occurred prior to the acceptance of his insurance application on March 29, 1989. The defendant argues that the otherwise valid contract is subject to rescission under O.C.G.A. § 33–24–7 because Cosby breached that common law duty.

The Supreme Court in *Stipcich v. Metropolitan Life Insurance Co.,* 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928), addressed the scope of an applicant's duty to disclose in the absence of authoritative state law. After applying for insurance and before the delivery of the policy and the payment of the first premium, the applicant suffered a recurrence of a duodenal ulcer. The applicant did not disclose that information to the insurance company. The Supreme Court recognized that there is no duty to disclose when the parties to an insurance policy contract exclusively on the basis of the conditions existing as of the date of application. *Id.* at 315, 48 S.Ct. at 513. When a contract does not come into existence until a later date, however, the insured has a duty to disclose changes that materially affect the risk that come to the knowledge of the insured after the application and before the delivery of the policy. The court stated,

> For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its

---

4. The plaintiff claims that this case is controlled by the recent Georgia Supreme Court decision in *Southwestern Life Insurance Co. v. Middle Georgia Neurological Specialists,* 262 Ga. 273, 416 S.E.2d 496 (1992). The issue in *Southwestern Life* was whether a failure to deliver prevented an insurance policy, which required delivery as a

condition precedent to liability, from being in force on the day the insured died. The court did not address the issue whether a misrepresentation in an insurance application would be a ground for rescission of a valid contract. The court agrees with the defendant that the plaintiff's reliance on that case is misplaced.

acceptance of the application, decline to issue a policy; or, if a policy has been issued, it has a valid defense to a suit upon it.

*Id.* at 316–17, 48 S.Ct. at 513–14 (citations omitted) (footnote omitted). The Court further stated that the failure of the insurance company to stipulate in the policy that disclosure was required did not relieve the applicant of the duty to do so. *Id.* at 318, 48 S.Ct. at 514.

Two early Georgia cases recognized the duty to disclose imposed upon the applicant for insurance. In *Southern Life Insurance v. Kempton,* 56 Ga. 339 (1876), the court acknowledged that a change in health after the application and before the policy issues will dispense with the insurance company's obligation to consummate the contract and that good faith requires the insured to make known any change in his health. *Id.* at 343. Relying in part on *Southern Life,* the Georgia Court of Appeals reiterated the "duty of disclosing to the company every fact material to the risk which comes to [the applicant's] knowledge at any time before the contract is finally closed." *McKenzie v. Northwestern Mutual Life Insurance Co.,* 26 Ga.App. 225, 229–30, 105 S.E. 720 (1920) (quoting *Equitable Life Assurance Society v. McElroy,* 83 F. 631 (8th Cir.1897)).

The facts in the instant case are undisputed. Cosby signed the medical questionnaire for increased life insurance coverage on February 28, 1989. On March 28, 1989, Cosby was hospitalized. On March 29, 1989, Cosby's application for increased coverage was accepted by Transamerica's underwriting department. On April 1, 1989, Cosby was diagnosed as having a brain tumor. Cosby did not inform Transamerica of his hospitalization or treatment by various physicians. In the first part of April, Cosby's insurance agent received the new policy pages and gave them to Cosby once the premium was tendered.

As of March 28, 1989, when Cosby entered the hospital, the contract between Cosby and Transamerica had not been consummated. Transamerica had not accepted the application and Cosby had not tendered payment for the increased coverage.

■ The court finds that Cosby's change in health rendered untrue a number of the responses on his medical questionnaire. Furthermore, Cosby's hospitalization and treatment by physicians were material facts of which the defendant should have been made aware prior to deciding whether to accept Cosby's application. The court finds that Cosby was under a duty to disclose his change of health to Transamerica.

■ In order to rescind insurance coverage, the insurer must establish that the application contained a misrepresentation, omission, concealment of fact, or incorrect statement. In addition, the insurer must show that it was either (1) fraudulent, (2) material either to the acceptance of the risk or to the hazard assumed by the insurer, or (3) that the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer. O.C.G.A. § 33–24–7(b).

The court previously determined that Cosby's application contained incorrect statements about being examined by a physician and being hospitalized. Transamerica submitted the affidavit of Bruce Powell, Second Vice President and Division Manager, New Business Underwriting and Issue, in support of its contention that the statement was material and that it would not have issued the policy had it known the true facts. Powell stated that if Transamerica had been aware of Cosby's hospitalization on March 28, 1989, it would have deferred all underwriting action on the application until Cosby's medical records could be obtained and the nature of his illness determined. once the defendant learned of Cosby's diagnosis, it would have declined to issue the increased coverage. Powell explained that that decision would have been automatic and in accordance with Transamerica's published underwriting standards. Transamerica declines such applications because a brain tumor is usually a fatal illness, the diagnosis of which significantly increases the risk of death and the hazard

assumed by the insurer. The court finds that the evidence clearly indicates that Transamerica would not have issued the increased coverage to Cosby had he disclosed the fact of his change in health. The court finds that Transamerica is authorized to rescind the additional life insurance coverage under O.C.G.A. § 33–24–7(b)(3). Accordingly, the defendant's motion for summary judgment is hereby GRANTED.

SO ORDERED.