**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 30, 2001**

JEFFREY LEE OADE and Thomas E.
Walsh, Personal Representative of
the Estate of SHEILAH CHOUINARD,

    Plaintiffs-Appellees,

v                                   No. 114786

JACKSON NATIONAL LIFE INSURANCE
COMPANY OF MICHIGAN,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

## I. INTRODUCTION

In this life insurance dispute, plaintiffs, Jeffrey Lee Oade and Sheilah Chouinard, seek to recover benefits from a Jackson National Life insurance policy issued and delivered to Gary Oade. Plaintiffs, the son and friend of Mr. Oade, respectively, are the named beneficiaries of the insurance

policy. Defendant claims that the policy never became effective because Mr. Oade failed, as required by the terms of the insurance application, to provide updated information about his health and medical treatment between the date he signed the application and the day the policy was issued. We granted leave to address the applicability of the statutory requirement under MCL 500.2218(1), that a misrepresentation in an application of insurance be material in order to make the insurance policy avoidable.

Because Mr. Oade had an explicit, contractual continuing duty to ensure that the answers in his insurance application remained true until the effective date of the policy, we hold that Mr. Oade's failure to supplement his medical history rendered his original answers false, making them "misrepresentations" within the meaning of MCL 500.2218(2). However, contrary to the Court of Appeals decision, we conclude that these misrepresentations were material, and that defendant was therefore entitled to avoid the contract. Accordingly, we reverse the Court of Appeals decision and reinstate summary disposition in favor of defendant.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 1993, Mr. Oade, a fifty-three year-old store owner, contacted his insurance agent and completed a Jackson National Life Insurance Company of Michigan

2

application for a "preferred" $100,000 life insurance policy.[1]
In order to evaluate the insurance risks posed by an applicant
and consistent with standard underwriting procedures, the
Jackson National application required answers to certain
questions about an applicant's health status. That
application further required that the applicant inform
defendant in writing if the applicant's health or any of the
answers or statements contained in the application changed
between the time the original answers were given and the date
the policy was issued and delivered.[2]

The application contained the following questions
relevant to the resolution of this case:

---

[1]Mr. Oade applied for a "preferred" life insurance
policy. After evaluating Mr. Oade's medical history, Mr. Oade
was finally approved for a "standard" policy which was more
expensive than the "preferred" policy. Though both parties
neglect to provide an explanation of the difference between
the two policies, it appears that a "preferred" policy is
issued to applicants who are in "better" health.

[2]The interim insurance receipt is another document that
Mr. Oade signed. The language on the interim insurance
receipt provided:

> I . . . understand and agree that:
>
> 1. no policy will go into force unless all my
> statements and answers in this application continue to be
> true as of the date I receive the policy:
>
> 2. if my health or any of my answers or statements
> given in this or any other supplement to this application
> change prior to delivery of the policy, I must so inform
> the Company in writing . . . .

2. Have you ever been treated for, or ever had any indication of:

\* \* \*

d. Chest pain, discomfort or tightness; palpitations, high blood pressure, rheumatic fever, heart murmur, heart attack or blood vessels?

3. Have you, in the past five years:

a. Consulted or been treated by a physician or other medical practitioner?

b. Been a patient in a hospital, clinic, or medical facility?

In answering the application questions, Mr. Oade denied, in response to question 2(d), that he had been treated for chest pain, discomfort or tightness, palpitations, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels. However, he disclosed that he had been treated for high blood pressure. In response to question 3(a) and (b), he denied that he had been hospitalized but disclosed that he had been treated by a physician or other medical practitioner during the preceding five years. Defendant did not contest the accuracy of the initial answers Mr. Oade made in response to the application.

On December 25, 1993, between the submission of Mr. Oade's application and defendant's approval and delivery of the policy, Mr. Oade went to a hospital emergency room, complaining of chest pains. He was admitted to the hospital and stayed overnight while tests were performed. As noted,

4

the application for insurance required Mr. Oade to provide updated health information. In particular, Mr. Oade's initial answers that he had *not* been a patient in a hospital in the preceding five years, and had never been treated for chest pains thus became inaccurate information concerning his health status. Despite the requirement to provide updated health information, it is undisputed that Mr. Oade did not inform defendant of his December hospitalization for chest pains.

On January 4, 1994, after evaluating Mr. Oade's application, defendant approved him for a "standard" policy rather than the "preferred" policy he had originally sought. Oade paid the additional premium on January 6, and the policy was delivered that day.

Mr. Oade died suddenly from a heart attack on September 1, 1994. Plaintiffs submitted a claim to defendant for payment of the death benefits provided in the life insurance policy. Defendant investigated, discovered the undisclosed hospitalization, and denied the claim on the ground that, although required to do so under the terms of the insurance application, Mr. Oade failed to report his change in medical history. Defendant declared that, because Mr. Oade had violated conditions precedent to create insurance coverage, the policy never became effective.

Following defendant's refusal to pay under the policy, plaintiffs brought this action in the circuit court where both parties filed cross-motions for summary disposition. The circuit court granted summary disposition in favor of defendant, holding that Mr. Oade's failure to communicate in writing the "material changes" to his answers in the application prevented the policy from taking effect.

The plaintiffs appealed, and the Court of Appeals reversed in an unpublished per curiam decision.[3] The Court of Appeals recognized that parties may mutually agree that certain conditions be met before an insurance contract will become effective. However, the Court reasoned that such contract terms must not conflict with applicable statutes. The Court held that the case was governed by MCL 500.2218(1). It rejected defendant's argument that the insurer was not claiming misrepresentation permitting *rescission* of an existing policy, but that the policy never became effective in the first instance.

In applying the statute, the Court of Appeals attempted to determine whether the undisclosed health information was material within the meaning of MCL 500.2218(1). In so doing, the Court relied on *Zulcosky v Farm Bureau Life Ins Co of Michigan*, 206 Mich App 95; 520 NW2d 366 (1994), for the

---

[3]Unpublished opinion per curiam, issued February 26, 1999 (Docket No. 202501).

6

proposition that a misrepresentation is not material if the insurer would have issued "a" policy, albeit a different one issued at a higher rate.

Applying these principles to the facts of the case, the Court of Appeals concluded that, because plaintiffs had presented the deposition and affidavit of one of defendant's underwriters indicating that there was a possibility that Mr. Oade would have been offered a policy at a higher rate, plaintiffs had established a genuine issue of fact concerning the materiality of Mr. Oade's failure to disclose.

This Court granted defendant's application for leave to appeal.[4]

### III. STANDARD OF REVIEW

Issues of statutory interpretation are questions of law and are therefore reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

A motion for summary disposition under MCR 2.116 (C)(10), which tests the factual support of a claim, is subject to de novo review. *Smith v Globe Life Ins Co,* 460 Mich 446, 454; 597 NW2d 8 (1999).

### IV. ANALYSIS

The Court of Appeals relied on the materiality

---

[4] 463 Mich 864 (2000).

7

requirement found in MCL 500.2218(1):

> No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

Although we agree with the Court of Appeals that MCL 500.2218 applies to the facts of the instant case, we disagree with its conclusion that Mr. Oade's misrepresentations were not material.

### A. APPLICABILITY OF MCL 500.2218

The touchstone of the statute's applicability is a "misrepresentation." MCL 500.2218(2) defines a "misrepresentation" as a "false representation." A "representation," in turn, is statutorily defined as a "statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." MCL 500.2218(2).

When he submitted his insurance application, Mr. Oade indicated on the application that he had not been a patient in a hospital in the preceding five years and that he had never been treated for chest pains. However, between the submission of Mr. Oade's application and defendant's approval and delivery of the policy at issue, Mr. Oade was hospitalized for

8

chest pains.  It is undisputed that Mr. Oade did not inform defendant of this event.

The question, then, is whether Mr. Oade engaged in a misrepresentation for purposes of MCL 500.2218(2).  We conclude that he did.  Under the express language of the insurance application, Mr. Oade had a continuing duty to ensure that the answers in his insurance application remained true as of the date he received the policy.  In relevant part, the application variously states:

> It is represented that the statements and answers given in this application are true, complete, and correctly recorded to the best of my . . . knowledge and belief.

> * * *

> I understand that no policy based on this application will be effective unless all of my statements and answers continue to be true as of the date I receive the policy.  I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the company in writing.

> * * *

> I understand that my statements and answers in this application must continue to be true as of the date I receive the policy.  I understand that if my health or any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.

Likewise, the interim insurance receipt provides as follows:

> [N]o policy will go into force unless all my statements and answers in this application continue to be true as of the date I receive the policy:

> * * *

9

> If my health or any of my answers or statements given in this or any other supplement to this application change prior to delivery of the policy, I must so inform the Company in writing . . . .

Despite contractually promising that his answers would "continue to be true" as of the effective date of the policy, Mr. Oade failed to do so. This failure rendered Mr. Oade's previous answers false, thereby making them misrepresentations under MCL 500.2218(2).

Having determined that the statute applies, we turn to the Court of Appeals decision that Mr. Oade's misrepresentations were not material and that defendant therefore could not avoid the insurance contract.

### B. MATERIALITY REQUIREMENT

MCL 500.2218(1) provides:

> No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

The Court of Appeals relied on its prior decision in *Zulcosky v Farm Bureau Life Ins Co, supra*, for the proposition that a change in facts is "material" only where the correct information would cause the insurer to reject the applicant altogether. *Zulcosky* would not find materiality where the correct information would merely prompt the insurer to offer

10

a policy at a higher premium.  However, this is contrary to the binding precedent of this Court.  Our decision in *Keys v Pace,* 358 Mich 74, 82; 99 NW2d 547 (1959), made clear that a fact or representation in an application is "material" where communication of it would have had the effect of "substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium."  *Keys*, in turn, is consistent with the plain language of MCL 500.2218(1), which defines materiality in terms of the insurer's refusal "to make *the* contract" (emphasis added), not "a" contract.

In this case, the undisputed evidence presented to the trial court made clear that the correct information would have led the insurer to charge an increased premium, hence a different contract.  Indeed, defendant's underwriter stated in her affidavit that defendant "may have been willing to offer a more expensive 'rated' insurance contract at approximately double the premium cost that Mr. Oade had paid for the 'standard' insurance policy in this instance."

Thus, the Court of Appeals erred in focusing on whether defendant would have issued *any* contract of insurance to Mr. Oade.  The proper materiality question under the statute is whether "the" contract issued, at the specific premium rate agreed upon, would have been issued notwithstanding the misrepresented facts.  The Court of Appeals contrary decision

11

in *Zulcosky* is overruled.

Because there is no genuine issue of material fact on the issue of materiality, defendant is entitled to summary disposition under MCR 2.116(C)(10).

### V.   RESPONSE TO THE DISSENT

Contrary to the dissent, we conclude that it is altogether irrelevant that plaintiff's health did not change during the prepolicy period.  The dissent, in concluding that the case presents a question of material fact, asserts that plaintiff offered evidence that he had not suffered a heart attack.   It further asserts that plaintiff's personal physician affirmed that decedent's health "did not change in anyway [sic]" between the date he applied for the insurance policy and when it was delivered.  Post at 9.  On the basis of this evidence, the dissent concludes that "the fact issue concerning the materiality of decedent's misrepresentations should be resolved by the trier of fact."  Post at 15.

However, the focus of inquiry under the statutory "materiality" test is whether a reasonable underwriter would have regarded Mr. Oade's updated answers regarding his hospitalization for chest pains as sufficient grounds for rejecting the risk or charging an increased premium, not whether the status of Mr. Oade's health had changed.  Because there is no dispute that defendant would have, at minimum, issued an insurance policy at a higher premium rate, no

12

reasonable jury could conclude that it would have issued the same contract.

To create an issue of fact on the materiality question, plaintiffs were free to bring forth evidence drawing into question the testimony of defendant's underwriter. Because plaintiffs did not do so, the trial court properly granted summary disposition to defendant under MCR 2.116(C)(10).

## VI. CONCLUSION

While we agree with the Court of Appeals that MCL 500.2218 applies here, we conclude that Mr. Oade's misrepresentations were material, thereby entitling defendant to avoid the insurance contract. Accordingly, we reverse the Court of Appeals decision and reinstate summary disposition in favor of defendant.

CORRIGAN, C.J., and WEAVER, TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.

13

JEFFREY LEE OADE and Thomas E.
Walsh, personal representative
of the estate of SHEILAH CHOUINARD,

    Plaintiffs-Appellees,

v                                                        No. 114786

JACKSON NATIONAL LIFE INSURANCE
COMPANY OF MICHIGAN, a Michigan
corporation,

    Defendant-Appellant.
_____

KELLY, J. (concurring in part and *dissenting in part*).

    I concur in part IV(A) of the majority's opinion. Because the decedent violated his contractual duty by failing to update his medical history, true statements in his insurance application became false at the time the contract was made. The false statements were "misrepresentations" within the meaning of MCL 500.2218(2).

    However, I dissent from the majority's conclusion in its part IV(B) that there was no genuine issue of material fact concerning the materiality of the misrepresentations.

Plaintiff introduced sufficient evidence to raise a fact question whether defendant would have issued the same policy at the same premium if timely notified of decedent's 1993 episode and hospitalization. Because the issue should be resolved by the trier of fact, I would affirm the Court of Appeals decision that summary disposition for defendant was improper.

## I. Misrepresentation and § 2218(2)

A trial court's ruling on a motion for summary disposition under MCR 2.116(C)(10), which tests the factual support for a claim, is reviewed de novo. See *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). Affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, are considered in the light most favorable to the party opposing the motion. MCR 2.116(G)(5). This case involves statutory interpretation, a question of law, that is also subject to de novo review. See *Oakland Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

As the majority points out, "representation" and "misrepresentation" are defined in the act:

> A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the

2

insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false. [MCL 500.2218(2).]

Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning. See *Western Mich Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997). Where a statute does not define a word, courts may consult dictionary definitions to ascertain the word's plain meaning. See *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994).

Although § 2218(2) defines a misrepresentation as, in essence, a "false statement as to past or present fact . . . at or before the making of the insurance contract . . . ," it does not define "statement." Resorting to a dictionary, one finds that "statement" is "something stated," "a communication or declaration in speech or writing, setting forth facts, particulars, etc.," or "a single sentence or assertion."[1]

In the present case, it is undisputed that, at the time he completed the insurance application, decedent provided accurate answers to the questions relating to his health and medical treatments. The application required him to provide

---

[1] *Random House Webster's College Dictionary* (1995).

3

an update to defendant if any of his answers changed between the time of his application and the time defendant issued the policy.

Because of decedent's December 1993 hospitalization, his statements that he had not been hospitalized in the preceding five years and had never been treated for chest pains were rendered false. Given that he did not update the statements, decedent's application contained false statements regarding his health at the time defendant issued the policy.[2] Because there were false statements or representations by decedent at the time the policy was delivered to him, there were misrepresentations within the meaning of § 2218(2).

The case of *Guardian Life Ins Co of America v Aaron*,[3] is instructive. In *Aaron*, the defendant answered in his application for insurance with plaintiff Guardian Life

---

[2]See 6 Couch, Insurance, 3d, § 82:2, pp 82-6, 82-7, ns 8-9 (1998). Statements set forth in an application for insurance are "continuing representations" until the date the contract becomes binding; see generally *Stipcich v Metropolitan Life Ins Co*, 277 US 311, 316; 48 S Ct 512; 72 L Ed 895 (1928), explaining the "continuing representation" concept. This Court has recognized the concept of "continuing representations," at least where an indorser of a note gives a financial statement to a bank to secure a line of credit. See *First State Savings Bank v Dake*, 250 Mich 525, 528; 231 NW 135 (1930). In *Dake*, this Court called the financial statement a "continuing representation" of defendant's responsibility. There, the indorser represented that the information within the financial statement was and continued to be true and correct unless notice of a change was given.

[3]181 Misc 393; 40 NYS2d 687 (1943).

Insurance Company that he had never been refused life insurance. That answer was true at the time. However, before Guardian accepted the policy, the defendant applied for and was refused life insurance by a second insurance company. He failed to give Guardian this information before it accepted the policy.

The New York court held that the defendant's failure to provide updated information constituted a misrepresentation under the applicable New York statute. See *id*. at 395-396.[4] The court reasoned that, because the defendant had a duty to disclose new information, statements in his application constituted continuing representations. They were considered as having been made before the time of the delivery of and

_____

[4]The New York statute provisions implicated in *Aaron* are remarkably similar to § 2218. In particular, § 149(1) of the New York Insurance Law defined, at that time, a representation as "a statement as to past or present fact made to the insurer . . . , at or before the making of the insurance contract as an inducement to the making thereof." A "misrepresentation" was defined as "a false representation." *Gay v NY Property Ins Underwriting Ass'n*, 1985 WL 1665 (SD NY). The statute further provided:

> (2) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract. [*Greene v United Mut Life Ins Co*, 38 Misc 2d 728, 730; 238 NYS 2d 809 (1963). NY Ins Law § 149, revised and renumbered and is now McKinney's Insurance Law § 3105 (1985).]

5

payment for the policy. See *id*. at 395. There, the defendant's earlier statement that he had never been refused insurance was rendered false because he did not update his application.  It was deemed a misrepresentation under the New York insurance statute.

Also instructive is *Cosby v Transamerica Occidental Life Ins Co*,[5] describing an insurance applicant's change of health as rendering untrue his responses in an insurance policy application where the application provided that "[a]ll of the statements and answers given in this application to the best of my . . . knowledge and belief continue to be true and complete as of the date of delivery of the policy."

Finally, there is *Fjeseth v New York Life Ins Co*, 20 Wis 2d 295; 122 NW2d 49 (1963).  In that case, the decedent asserted on an insurance application that he had never had pain in his chest. He asserted that he had not consulted or been examined by a physician in the previous ten years. After he completed the application, but before the policy was delivered, the plaintiff suffered chest pains and went to a doctor. The plaintiff failed to disclose these facts to the defendant insurer.  A provision in the policy conditioned it becoming effective on the continued truth of such answers up to the time that the policies went into effect. See *id*. at

---

[5]860 F Supp 830, 834 (ND Ga, 1993).

6

304. The Supreme Court of Wisconsin held that the plaintiff's failure to update constituted a material misrepresentation under Wis Stat § 209.06(1). See *id*. at 305. At the time, Wis Stat § 209.06(1) provided:

> No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss. [*Fjeseth, supra* at 305, n 1; § 209.06(1) has been revised and renumbered and is now Wis Stat § 631.11.]

Following the reasoning in *Aaron, Cosby*, and *Fjeseth,* I would conclude that decedent's December 1993 hospitalization rendered false his statements in the application regarding his hospitalization and chest pain history. As a consequence, his application contained false statements or representations at the time the policy was delivered to him. These constitute misrepresentations within the meaning of § 2218(2).

## II. Materiality

The next question is whether defendant may avoid the insurance policy, as a matter of law, on the basis that the misrepresentations were material. Under § 2218(1), a misrepresentation is deemed "material" when knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to "make the contract." MCL

7

500.2218(1).

The Court of Appeals relied on *Zulcosky v Farm Bureau Life Ins*,[6] for the proposition that a misrepresentation is "material" only where the insurer would have rejected the application altogether. See *id*. at 99, citing *In re Certified Question, Wickersham v John Hancock Mut Life Ins Co*, 413 Mich 57, 65; 318 NW2d 456 (1982); *Clark v John Hancock Mut Life Ins Co*, 180 Mich App 695, 699-700; 447 NW2d 783 (1989).[7]

As the majority observes, the *Zulcosky* test for materiality appears contrary to *Keys v Pace*, 358 Mich 74; 99 NW2d 547 (1959). In *Keys*, we articulated the proper test for materiality as follows:

> "The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against[,] so as to bring about a rejection of the risk or the charging of an increased premium." [*Id.* at 82, quoting 29 Am Jur, Insurance, § 525.]

However, even under the seemingly more stringent *Keys* test, there exists a genuine factual dispute whether decedent's misrepresentations were "material."

_____

[6]206 Mich App 95; 520 NW2d 366 (1994).

[7]We denied leave to appeal in *Zulcosky*. 448 Mich 929 (1995).

8

Defendant submitted an affidavit from one of its underwriters in support of its claim that the misrepresentations were material to its acceptance of the risk or hazard assumed. The affiant stated that she would have provided a policy at a higher premium had she known of the 1993 hospital visit when issuing the policy, hence a different contract.

Plaintiff proffered evidence that one day after the 1993 hospital visit, medical tests ruled out a heart attack as the cause of the decedent's chest pain. Also, about two weeks later, decedent passed a cardiovascular stress test. It showed that his level of cardiovascular fitness was above average for someone his age.

Plaintiff also introduced an affidavit from Dr. John Hall, the decedent's personal physician. In it, Dr. Hall stated that decedent's health "did not change in anyway [sic]" between the date he applied for the insurance policy and when it was delivered.

A jury reasonably could conclude, on the basis of the record, that a reasonable underwriter would have issued the same policy to decedent even had he given it notice of his hospitalization. It reasonably could conclude, also, that a reasonable underwriter would not have charged an increased premium.

The majority notes that the underwriter's affidavit was "uncontradicted" in stating that defendant would have charged a higher premium had it known of decedent's hospitalization. It asserts, also, that plaintiff's evidence that the decedent's health did not change is "altogether irrelevant." Slip op at 12. This evidence leads it to conclude that a reasonable jury could only find that defendant would have charged an increased premium. *Id*. This conclusion impermissibly invades the province of the factfinder by resolving an unsettled question of fact.

I disagree that the affidavit from defendant's underwriter precludes a finding that a genuine factual dispute exists here whether defendant would have charged an increased premium. First, as the majority observes, the *Keys* test for materiality is an objective inquiry. See *Keys*, *supra* at 82. Thus, the evidence from defendant's underwriter, while relevant, is not dispositive. Instead, the question is what a reasonable underwriter would have decided had it known of the misrepresented facts when it issued the policy of insurance. *Id.* In this regard, I find evidence that the decedent's health did not change during the prepolicy period very relevant. It challenges the credibility of the affiant. See generally, *McDaniels v American Bankers Ins Co of Florida*, 227 AD2d 951, 952; 643 NYS2d 846 (1996). The affiant did not assert that the

10

mere fact of the hospitalization would have occasioned an automatic premium increase irrespective of whether there was a change in the applicant's health.[8]  The affiant did not indicate that she had been informed that there had been no change in decedent's health within two months after the hospitalization.

Moreover, plaintiff introduced evidence questioning the veracity of the defendant's underwriter's assertions in the affidavit.  Specifically, plaintiff proffered evidence that his 1993 hospitalization was not due to a heart attack and that he passed a cardiovascular stress test shortly after the hospitalization  Also, he showed that his health did not change between the date he applied for the insurance policy and the date it was delivered.  Therefore, the affidavit does

_____

[8]The majority asserts that "the undisputed evidence presented to the trial court made clear that the correct information would have led the insurer to charge an increased premium, hence a different contract."  Slip op at p 11.  The correct information was that, at the time of and after the 1993 hospitalization, no test or medical opinion evidenced that defendant had had a heart attack.  The affiant based her conclusion that the defendant would not have entered into the insurance contract on her belief, stated in the affidavit, that the decedent "had been admitted to Sparrow Hospital in December 1993 complaining of shortness of breath, chest pains and a probable heart attack . . . ."

Hence, the affiant's reference to charging an increased premium was based on inaccurate or incomplete information. Also, it did not state that any hospitalization, regardless of the triviality of its cause, would have given rise to a different contract having been offered.

11

not stand unchallenged. See *Meyer v Blue Cross & Blue Shield of Minnesota*, 500 NW2d 150, 153 (Minn App 1993).

In *Meyer*, the defendant's underwriter testified that the defendant would have denied coverage had it known of the insured's physical condition. The court found that a question of fact existed on the issue, nonetheless. It stated that "materiality is a fact question based on the objective facts of the particular case, and '[a] jury is not required to accept even uncontradicted testimony if improbable or if surrounding facts and circumstances afford reasonable grounds for doubting its credibility.'" *Id*. at 153, quoting *Blazek v North Am Life & Casualty Co*, 251 Minn 130, 137; 87 NW2d 36 (1957).

The same is true respecting defendant's self-serving affidavit in support of the motion for summary disposition. Surely the majority would not assert that any affidavit by its underwriters, if not directly refuted, would eliminate a fact question on materiality. By way of hypothetical example, assume that questions in the insurance application asked the applicant, "Do you use tobacco in any form other than cigarettes?" "Did you ever use tobacco in any other form?" Assume that the applicant answered "No" and that, between the date he submitted the application and received the policy, he smoked a cigar in celebration of a newborn child. Assume,

12

also, that he did not inform the insurer of that fact.  Assume that, in subsequent litigation, the insurer's underwriter submitted an affidavit in support of the insurer's motion for summary disposition.  Assume he asserted that the insurer would not have issued the insurance policy to the applicant had it known about the cigar.  Would that assertion, if not directly rebutted, require a finding, as a matter of law, that the failure to disclose the cigar was a material misrepresentation?

In *Brown v Pointer,*[9] this Court expressed its agreement with the proposition that summary disposition is inappropriate where a factual assertion in a movant's affidavit depends on the affiant's credibility.  In particular, it stated:

> [W]here the truth of a material factual assertion of a movant's affidavit depends on the affiant's credibility, there inheres a genuine issue to be decided at a trial by the trier of fact and a motion for summary judgment cannot be granted.  *Arber v Stahlin*, 382 Mich 300, 309; 170 NW2d 45 (1969); *Durant v Stahlin*, 375 Mich 628, 647-648; 135 NW2d 392 (1965).  [*Id*. at 354.]

In this case, plaintiff's evidence of the state of decedent's health after the hospitalization afforded reasonable grounds to doubt the credibility of the underwriter's affidavit.  Thus, plaintiff created a triable fact question whether defendant would have charged an

---

[9]390 Mich 346; 212 NW2d 201 (1973).

13

increased premium had it known of the hospitalization that, decedent's physician said, showed no change in decedent's health. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994), "[t]he court is not permitted to assess credibility, or to determine facts on a motion for summary judgment."

Moreover, the court should be cautious in concluding that no factual dispute exists solely on the basis of an "uncontradicted" affidavit from an insurance company's underwriter. See *Gibbons v John Hancock Mut Life Ins Co*, 227 AD2d 963, 964; 643 NYS2d 847 (1996); *Volunteer State Life Ins Co v Richardson*, 146 Tenn 589; 244 SW 44 (1922); 6 Couch, Insurance, 3d, § 82:7, p 82-15.

In *Volunteer State L Ins Co*, the Tennessee Supreme Court articulated well the concerns associated with accepting as dispositive statements from insurance companies regarding the materiality of a misrepresentation:

> It is not to be left to the insurance company to say after a death has occurred that it would or would not have issued the policy had the answer been truly given. It is true the practice of an insurance company with respect to particular information may be looked to in determining whether it would have naturally and reasonably influenced the judgment of the insurer, but *no sound principle of law would permit a determination of this question merely upon the say so of the company after the death has occurred.* [244 SW 49 (emphasis added).]

When reviewing the ruling on defendant's motion for summary disposition, we construe the facts in the light most favorable to plaintiff. That, coupled with the reasoning already set forth, leads me to conclude that the fact issue concerning the materiality of decedent's misrepresentations should be resolved by the trier of fact. Summary disposition in defendant's favor, therefore, was improper.

## III. Conclusion

I would hold that, because decedent failed to update his health information, his application contained misrepresentations on the date the insurance policy was delivered. Thus, because a genuine factual dispute exists regarding whether the misrepresentations were material, I would affirm the Court of Appeals conclusion that summary disposition for defendant was improper.

CAVANAGH, J., concurred only in the result reached by KELLY, J.